**FILED**

~~MAY 30 2008~~
~~MAY 8 0 2008~~
**MAY 3 0 2008**
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

United States of America ex rel.
RONALD KLINER (Reg. No. B-77152),           )

      Petitioner,

      vs.

TERRY MCCANN, Warden, Superintendent,       )
or authorized person having custody of petitioner,  )
                           )
      Respondent.                          )
                           )

# 08CV3134
# JUDGE DARRAH
# MAG. JUDGE KEYS

Case Number of State Court
Conviction: 93 CR 15476

## PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: Circuit Court of Cook County, Illinois, County Department, Criminal Division

2. Date of judgment of conviction: February 28, 1996 (jury verdict of guilty entered)

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known): First Degree Murder (Count I, 93 CR 15476)

4. Sentence(s) imposed: Death (Illinois Governor George Ryan commuted the sentence to life in prison on January 10, 2003)

5. What was your plea? (Check one)       (A) Not guilty     ( X )
                                  (B) Guilty        ( )
                                  (C) Nolo contendere ( )

    If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details: N/A

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):    Jury ( X )     Judge only ( )

2. Did you testify at trial?    YES ( )     NO    ( X )

3. Did you appeal from the conviction or the sentence imposed? YES ( X )  NO ( )

   (A) If you appealed, give the

      (1) Name of court:  The Supreme Court of Illinois. Mr. Kliner's appeal lay directly with

the Supreme Court of Illinois because he originally received a sentence of death. See 720 ILCS 5/9-1(I).

(2)  Result:          Appeal denied.

(3)  Date of ruling:   December 3, 1998

(4)  Issues raised:

Issue #1:  Whether the trial court erred in denying the defense's several motions to dismiss based upon a violation of the speedy trial statute, where approximately 531 days of the delay between Mr. Kliner's arrest on June 10, 1993, and the commencement of his trial on January 25, 1996, were not attributable to him.

Issue #2:  Whether the trial court erred in failing to dismiss the conspiracy count of the indictment, and in ruling that the co-conspirator exception to the hearsay rule permitted Joseph Rinaldi to testify to the alleged pre-offense and post-offense hearsay statements of Michael Permanian and Mr. Kliner.

Issue #3:  Whether reversible error occurred when the trial court, after receiving six written inquiries from the jury, failed to notify or consult with defense counsel for the defendant about those inquiries or proper responses thereto, and thus engaged in impermissible *ex parte* communications in tendering its responses to the jury.

Issue #4:  Whether reversible error occurred where the trial court failed to conduct any polling of juror Reed Larson, and again where the court polled 14 "jurors" including one veniremember who had been removed by peremptory challenge prior to trial, one juror who had been seated but who was then removed and replaced by an alternate during trial, and one alternate juror who was never seated, indicating that non-jurors were improperly a part of the deliberative process.

Issue #5:  Whether the trial court improperly restricted the defense's attempts to cross-examine key prosecution witnesses Joseph Rinaldi and Tammy Behenna regarding various matters which were appropriate for cross-examination and critical to Mr. Kliner's attempts to defend himself.

Issue #6:  Whether reversible error occurred where the trial court, over defense objection, permitted the state to elicit impermissible evidence of other crimes from its witness Tammy Behenna, specifically that Mr. Kliner had supposedly pistol-whipped Ms. Behenna, his former girlfriend, an error which was exacerbated by the court's refusal to let the jury also hear that Mr. Kliner had been acquitted of armed violence in regard to that incident.

Issue #7:  Whether Mr. Kliner was denied a fair trial where the prosecutor, in his opening statement, promised without a good-faith basis that various witnesses would testify as to Mr. Kliner's ownership of .22 caliber handguns, but then failed to deliver any such evidence, particularly where

Revised: 7/20/05

two of those witnesses were inexplicably never asked about such evidence, and where the testimony of other such witnesses was deemed inadmissible.

Issue #8:   Whether the trial court committed reversible error by not ordering a new trial when, during closing arguments, the prosecutor repeatedly told the jury that the defense too had subpoena power and could have subpoenaed various witnesses, that the defense had called only certain witnesses, and other comments which referenced the defendants's failure to testify, and further when he informed Mr. Kliner's jury of damaging testimony which had been heard by his co-defendant Michael Permanian's jury only.

Issue #9:   Whether the trial court erred in permitting the prosecution to elicit from its witness John Apel, Sr. hearsay testimony regarding a supposed inculpatory statement by Mr. Kliner to his grandfather, Joseph Sblendorio, who was not called as a witness in the case.

Issue #10:   Whether the trial court erred in failing to recuse herself from the sentencing hearing, or at least from the hearing on defendant's motion, after defense counsel moved for discovery regarding whether *ex parte* threats had prompted the trial court to order extra security for herself.

Issue #11:   Whether the death sentence imposed by the sentencing court upon Ronald Kliner was unreasonably disparate from the 60-year term imposed by the same judge upon Joseph Rinaldi who, by his own testimony, planned the offense and hired others to commit it.

Issue #12:   Whether, where the sentencing court improperly received several items of unreliable evidence in aggravation, refused to allow the defense to impeach an aggravation witness, permitted the state to argue Mr. Kliner's future dangerousness should a death sentence not be imposed, and failed to allow the defense to argue residual doubt, a new capital sentencing hearing is required.

Issue #13:   Whether the Illinois death penalty statute violates the Eighth and Fourteenth Amendments because it places a burden of proof on the defendant which precludes meaningful consideration of mitigation and allows the sentencer to weigh a vague aggravating factor: "any other reason" a defendant should be sentenced to death.

Issue #14:   Whether the Illinois death penalty statute is unconstitutional because it does not sufficiently minimize the risk of arbitrarily or capriciously imposed death sentences.

(B)  If you did not appeal, explain briefly why not: N/A

4.   Did you appeal, or seek leave to appeal, to the highest state court?   YES ( X )  NO ( )

(A)  If yes, give the

(1)   Result:        Appeal denied.

Revised: 7/20/05

(2)  Date of ruling:  December 3, 1998

(3)  Issues raised:  See #3 Above

(B)  If no, why not:  N/A

5.  Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes ( X ) No ( )

    If yes, give  (A) date of petition:  May 3, 1999

                  (B) date *certiorari* was denied:  October 4, 1999

## PART II – COLLATERAL PROCEEDINGS

1.  With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

    YES ( X )  NO ( )

    With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

    A. Name of court:  Circuit Court of Cook County, Illinois, County Department, Criminal Division

    B. Date of filing:  Original *pro se* petition filed in September 8, 1997; counsel was then appointed and an amended petition was filed May 25, 2001.

    C. Issues raised:

        Issue #1:  Ronald Kliner was denied his Sixth Amendment right to the effective assistance of counsel at trial where his attorney failed to investigate and present exculpatory evidence establishing that he did not murder Dana Rinaldi.  Defense counsel's performance fell below reasonable professional standards where he failed to investigate and present evidence establishing that Mr. Kliner was not, and could not have been, at the scene of the crime at the time of the murder.  Mr. Kliner was prejudiced by his attorney's failure to present his alibi defense and other exonerating evidence.

        Issue #2:  Ronald Kliner was denied his Sixth and Fourteenth Amendment rights to testify and to the effective assistance of counsel where his attorney prevented him from testifying by informing him that he would have to get another lawyer if he wanted to testify.

        Issue #3:  Ronald Kliner was denied his Sixth Amendment right to the effective assistance of counsel where his attorney failed to investigate and use readily available evidence to impeach the testimony of the state's key witnesses.  Trial counsel was constitutionally ineffective for failing to investigate and present evidence (1) impeaching Joseph Rinaldi's testimony regarding Ronald Kliner's alleged incriminating statements while incarcerated; (2) showing that John Apel had a motive to falsely

4

accuse Ronald Kliner of Dana Rinaldi's homicide and had threatened to do so; (3) showing that Tammy Behenna had a motive to falsely accuse Ronald Kliner of murder; (4) impeaching Tammy Behenna's testimony regarding Ronald Kliner's alleged incriminating statements at Great America Amusement Park; and (5) that Tammy Behenna's accusations of Ronald Kliner were not attributable to fear of Kliner.

Issue #4:    Ronald Kliner was denied his Sixth Amendment right to the effective assistance of counsel where his attorney failed to investigate and present evidence that someone other than Mr. Kliner shot and killed Dana Rinaldi.

D. Did you receive an evidentiary hearing on your petition?    *YES ( X )   NO ( )

*    Petitioner received an evidentiary hearing only on Issue #2 above, that petitioner was denied his Sixth and Fourteenth Amendment right to testify where his attorney prevented him from testifying by informing him that he would have to get another lawyer if he wanted to testify.

E. What was the court's ruling?    The court granted the State's motion to dismiss Counts I, III and IV of petitioner's amended petition for post-conviction relief.   The remainder of the petition (Count II) was later denied.

F. Date of court's ruling: Partial dismissal on September 19, 2002; remainder of the petition denied on December 8, 2003.

G. Did you appeal from the ruling on your petition?    YES ( X )   NO ( )

H. (a)    If yes, (1) what was the result? Judgment of the Circuit Court affirmed.

(2) date of decision:    December 29, 2006

(b)    If no, explain briefly why not:  N/A

I. Did you appeal, or seek leave to appeal this decision to the highest state court?

YES ( X ) NO ( )

(a)    If yes, (1) what was the result?    Petition for leave to appeal denied.

(2) date of decision:    May 31, 2007

(b)    If no, explain briefly why not:  N/A

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or *habeas corpus*?  Y E S  ( X ) NO ( )

A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

Revised: 7/20/05

**Motion for DNA Testing:**

| | | |
|---|---|---|
| 1. | Nature of proceeding | Motion for DNA testing pursuant to 725 ILCS 5/116-3. |
| 2. | Date petition filed | August 26, 1999 |
| 3. | Ruling on the petition | Motion denied. |
| 4. | Date of ruling | November 20, 2000 |
| 5. | If you appealed, what was the ruling on appeal? | Motion to reconsider filed January 3, 2001; motion to reconsider granted. State then appealed the grant of the motion to reconsider directly to the Illinois Supreme Court, and the Illinois Supreme Court denied the state's appeal for lack of jurisdiction. |
| 6. | Date of ruling on appeal | State's appeal denied on December 19, 2002. |
| 7. | If there was a further appeal, what was the ruling ? | N/A |
| 8. | Date of ruling on appeal | N/A |

**Motion for Additional DNA Testing:**

| | | |
|---|---|---|
| 1. | Nature of proceeding | Motion for DNA testing pursuant to 725 ILCS 5/116-3. |
| 2. | Date petition filed | August 16, 2004 |
| 3. | Ruling on the petition | Motion denied. |
| 4. | Date of ruling | July 21, 2005 |
| 5. | If you appealed, what was the ruling on appeal? | Appeal pending (No. 1-05-3150) |
| 6. | Date of ruling on appeal | Appeal pending |
| 7. | If there was a further appeal, what was the ruling ? | N/A |
| 8. | Date of ruling on appeal | N/A |

3.  With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**? YES ( )   NO ( X )

   A. If yes, give name of court, case title and case number: N/A

6

B. Did the court rule on your petition? If so, state

    (1) Ruling:   N/A

    (2)  Date:    N/A

4.  With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?  YES ( X )         NO ( )

If yes, explain: Petitioner currently has pending before the Illinois Appellate Court, First District, an appeal of the Circuit Court of Cook County's denial of his motion for additional DNA testing (No. 1-05-3150), the "Motion for Additional DNA Testing" referenced in response to Question #3 above. This motion sought DNA testing on shell cases and a single live cartridge found at the scene of Dana Rinaldi's murder, as well as on her purse and on hair evidence recovered from her jacket. The circuit court denied this motion and Mr. Kliner appealed that decision. Briefing is completed, and the parties are waiting for a ruling.

## PART III – PETITIONER'S CLAIMS[1]

1.  State <u>briefly</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**(A)    Ground one:**    **Mr. Kliner was denied his Sixth and Fourteenth Amendment right to effective assistance of counsel where his attorney failed to investigate and present available exculpatory evidence establishing that Mr. Kliner did not kill Dana Rinaldi.**

    <u>Supporting Facts</u>:

On February 18, 1988, Dana Rinaldi was shot and killed inside her car in the parking lot of her apartment complex in Palatine, Illinois. Evidence put her time of death between 12:10 a.m. and 12:20 a.m. Although the police began investigating the case immediately, Ronald Kliner and his co-defendants Michael Permanian and Joseph Rinaldi, Dana Rinaldi's husband, were not arrested in connection with her death until over five years later. Joseph Rinaldi eventually gave a statement to police that he had hired Ronald Kliner and Michael Permanian to kill his wife in exchange for a portion of the proceeds from a life insurance policy, although no evidence, other than Mr. Rinaldi's testimony, was ever presented of any monetary payments Mr. Rinaldi ever made to either Mr. Kliner or Mr. Permanian. In exchange for his testimony against Mr. Kliner and Mr. Permanian, Mr. Rinaldi received an agreement from the state to recommend only a forty-year sentence for him. This was in stark contrast to the sentence of death that Mr. Kliner originally received.

Aside from Mr. Rinaldi's testimony, very little evidence connected Mr. Kliner to Dana Rinaldi's death. The police found no fingerprints in Ms. Rinaldi's car, and did not connect Mr. Kliner to any weapon used to kill Ms. Rinaldi. A witness interviewed a few days after the shooting told the police that around 11:45 p.m. on February 17, he had seen two men in a small red car driving through the

---

[1]The documents and evidence to which Mr. Kliner refers in support of his petition are all contained within the state court record. Mr. Kliner would be happy to provide the state court record to the Court, or assist Respondent in providing the record, at the Court's request.

Revised: 7/20/05

apartment complex's parking lot. He identified a photograph of Mr. Kliner as one that "appeared to be" the man sitting in the passenger seat of the red car, but he did not identify Mr. Kliner in a later lineup, and did not identify Mr. Kliner when he testified at Mr. Kliner's trial. Tammy Behenna, Mr. Kliner's former girlfriend and the mother of his son, also testified against Mr. Kliner. As discussed in more detail below, Ms. Behenna did not come forward until three years after the murder; it was not until September of 1991 that Ms. Behenna finally told police that Mr. Kliner had purportedly made inculpatory statements to her in 1988. Her testimony against him at trial came after she had broken up with Mr. Kliner, entered into a custody battle with him, sought employment with several police departments, and accepted $1600 from the police for "relocation expenses." John Apel Sr., Mr. Kliner's uncle and a member of the Chicago Police Department, waited until 1993 to tell police that Mr. Kliner had confessed to him in 1988. John Floyd Apel, John Apel Sr.'s son, also waited until 1993 to tell the police that Mr. Kliner had purportedly made inculpatory statements to him in 1988 and in 1992; at the time of the purported 1992 statement Mr. Kliner turned out to have been in jail and unable to make the statement to John Floyd Apel as Mr. Apel claimed.

   Ronald Kliner has never admitted any involvement in Dana Rinaldi's murder, and indeed has continuously asserted his innocence up until the present day. Unfortunately, Mr. Kliner's trial counsel did not provide Mr. Kliner with effective assistance of counsel at trial, or anything approaching effective assistance. Mr. Kliner's trial counsel did not present any evidence at trial about Mr. Kliner's whereabouts during the period surrounding the murder, despite being aware that a resident of the apartment complex had selected Mr. Kliner's photograph as looking like a person he saw in the complex's parking lot at 11:45 p.m.

   1. Mr. Kliner could not have killed Ms. Rinaldi because he was several miles away at the time of the murder. In his amended post-conviction petition, Mr. Kliner presented evidence that prior to trial Mr. Kliner told his trial counsel that he had been at his real estate office at 7185 W. Grand Avenue in Chicago at the time of Ms. Rinaldi's murder. Mr. Kliner's trial counsel received through discovery Mr. Kliner's office telephone records showing that Mr. Kliner took a telephone call at his office lasting until 11:12 p.m., and that a sheriff's police investigator estimated the drive from Mr. Kliner's office to the scene of the murder to take approximately 30 minutes (although the investigator did not document the details of how he made the trip or what route he took). Mr. Kliner's post-conviction counsel presented evidence that it would have taken a minimum of 36 minutes to drive from Mr. Kliner's office to the apartment complex in Palatine.

   In addition, prior to his trial Mr. Kliner told his trial counsel that he had two witnesses who would confirm he was at his office in Chicago between 11:30 p.m. and 12:00 a.m. on the night of February 17-18, 1988. These witnesses both contacted his trial counsel prior to trial. One witness, Patricia Werner, told Mr. Kliner's counsel that Mr. Kliner telephoned her at about 11:00 p.m. on February 17 and that she then went to his office to pick up real estate listing books from him. She stated that she left Mr. Kliner's office between 11:50 p.m. and 12:00 a.m., and Mr. Kliner was still at the office when she left. Another witness, Cynthia Hani, called Mr. Kliner's trial counsel before trial and told him that she thought she might have been with Mr. Kliner at his office the night of the murder between 11:45 p.m. and 12:00 a.m; corroborating evidence established that she was with Mr. Kliner at his office that same evening.

   2. The jury never heard that a hair found on the victim did not match Mr. Kliner, the victim, or his co-defendants. In his amended post-conviction petition Mr. Kliner presented evidence that prior to trial Mr. Kliner's trial counsel received an Illinois State Police Laboratory report showing that a head hair was found on Dana Rinaldi's jacket, and that this hair came from a person other than Mr. Kliner, Dana Rinaldi, or Michael Permanian. The report also stated that Mr. Kliner and Mr. Permanian provided none of the hairs found on Dana Rinaldi's clothing.

8

Mr. Kliner's trial counsel's failure to investigate or present evidence of Mr. Kliner's alibi, the impossibility of Mr. Kliner driving from his office to Palatine in time to commit the murder, and the fact that none of the hairs found on Ms. Rinaldi's body matched Mr. Kliner or Mr. Permanian, was a critical error that otherwise would have provided him with an alibi and would have led to a different outcome at his trial. The court, in dismissing his amended post-conviction claims of ineffective assistance of counsel, made unreasonable findings of fact and unreasonably applied clearly established federal law in concluding that the failure to present this evidence did not prejudice Mr. Kliner. The Illinois Appellate Court and the Illinois Supreme Court likewise made unreasonable findings of fact and unreasonably applied clearly established federal law in affirming the dismissal of these claims.

**(B) Ground two:**     **Mr. Kliner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel where his attorney failed to investigate and use readily available evidence to impeach the state's key witnesses, particularly where his counsel failed to present evidence (1) impeaching Joseph Rinaldi's testimony that Mr. Kliner confessed to him while at Cook County Jail; (2) impeaching John Apel by demonstrating he had a motive to falsely accuse Mr. Kliner and in fact had threatened to falsely accuse him in the past; (3) impeaching Tammy Behenna by showing her motive to falsely accuse Mr. Kliner of murder; (4) impeaching Tammy Behenna's testimony that Mr. Kliner confessed to her at Great America Amusement Park; and (5) impeaching Tammy Behenna's testimony that she was afraid of Mr. Kliner.**

Supporting Facts:

Joseph Rinaldi. At trial, Joseph Rinaldi testified that between September 1993 and January 1995, while he, Mr. Kliner, and Mr. Permanian were incarcerated at the Cook County Jail, the three of them had numerous conversations on court dates when the three were transported to the courthouse. Mr. Rinaldi testified that during these conversations Mr. Kliner and Mr. Permanian made inculpatory statements to him about Dana Rinaldi's murder. At trial, Mr. Kliner's trial counsel presented no direct evidence to refute that these conversations took place.

In his amended post-conviction petition Mr. Kliner presented evidence that he could not have participated in these conversations. Specifically, he told his trial counsel that because Mr. Rinaldi was in protective custody in the Cook County Jail, he was separated from general population inmates even during transfers. Despite this, Mr. Kliner's trial counsel did not investigate this evidence. Had he investigated, he would have uncovered the evidence that Mr. Kliner's post-conviction counsel ultimately discovered. In his amended post-conviction petition Mr. Kliner presented evidence in the form of housing and transportation records, affidavits of Cook County Department of Corrections employees, a copy of an order directing that Mr. Kliner, Mr. Permanian and Mr. Rinaldi be separated, affidavits from Mr. Kliner's investigators, and affidavits from fellow inmates demonstrating that jail personnel were aware that Kliner, Permanian and Rinaldi were to be kept separated, that they were in fact kept separated, and that these conversations could not have occurred as Rinaldi claimed.

John Apel Sr.. At trial, John Apel testified that on the day of Dana Rinaldi's murder, Mr. Kliner called to tell him to watch the news and to ask him if he had seen the story on Dana Rinaldi's murder. Apel also testified that in May of 1988, Mr. Kliner supposedly admitted to shooting Dana Rinaldi and provided details about the killing to Apel and his son. Prior to trial, Mr. Kliner told his trial counsel that Apel had a motive to testify falsely because Apel had previously falsely accused Mr. Kliner of stealing money from him and had threatened to implicate Mr. Kliner in the Rinaldi

9

murder if he did not pay Apel the money Apel believed Mr. Kliner had stolen from him. Mr. Kliner further told his counsel that his stepfather, stepbrother and uncle had heard Apel threaten to implicate him in the Rinaldi murder. Despite receiving this information, Mr. Kliner's trial counsel failed to investigate this evidence or speak to these witnesses, or to present evidence directly impeaching Apel about these statements.

Mr. Kliner presented evidence in his amended post-conviction petition that had he been called to testify his stepfather, Alvin Goldstein, would have testified that Apel told Mr. Goldstein that if Mr. Kliner did not return his property he would implicate Mr. Kliner in Dana Rinaldi's death. He presented evidence that if his uncle, Vito Sblendorio, had been called to testify he would have testified that Mr. Apel told Mr. Sblendorio that he would like to shoot Mr. Kliner, that he was not afraid of Mr. Kliner, and that if Mr. Kliner returned his property he would not "put a case on him." Mr. Kliner presented evidence that if his stepbrother, Anthony Goldstein, had been called to testify he would have testified that Mr. Apel left Mr. Kliner (with whom Anthony Goldstein lived in 1991) threatening voicemail messages about wanting money. Mr. Goldstein also would have testified that Apel once pulled over Mr. Goldstein's car and told him that Mr. Kliner needed to pay him or else Apel would say Mr. Kliner had killed Dana Rinaldi. Mr. Goldstein would have also testified that he reported Apel's threats to him to police internal affairs.

<u>Tammy Behenna</u>. At trial Tammy Behenna, Mr. Kliner's ex-girlfriend, testified that between 1988 and 1990 Kliner made several inculpatory statements in her presence concerning the murder of Dana Rinaldi. Behenna admitted that she did not begin cooperating with authorities and discussing these purported statements until September of 1991, three years after the murder. Although Mr. Kliner's trial counsel cross-examined Behenna about her custody dispute with Mr. Kliner in order to suggest she had a motive to lie, Mr. Kliner's trial counsel did not refer to trial transcripts from the custody dispute which would have provided a clear motive for Behenna's false testimony and would have further explained the timing in which Ms. Behanna began cooperating with the authorities. In his amended post-conviction petition, Mr. Kliner presented evidence that before trial his trial counsel possessed transcripts of hearings in late August 1991 concerning the custody matter in which the court informed Ms. Behenna that Mr. Kliner had a right to visit his son, and that it would take away his right to see his son only if it heard evidence of a serious offense by Mr. Kliner. Had Mr. Kliner's trial counsel questioned Ms. Behenna about the August 1991 hearing and the timing of her coming forward one month later, he could have effectively argued that Ms. Behenna began cooperating with the authorities immediately after these court hearings because she wanted to make sure that Mr. Kliner was connected to a more serious offense and therefore would lose the right to visit his son.

At trial Ms. Behenna also testified that in August of 1988, she was standing with Mr. Kliner by a Ferris wheel at Great America Amusement Park when Mr. Kliner supposedly admitted that he had walked up to a woman's car when she was arriving home from work and shot the woman five times in the head, that Permanian's car had been noticed, and that Mr. Kliner was smiling when he told her this. Behenna testified that she thought that Mr. Kliner was talking about the Rinaldi homicide. Mr. Kliner's trial counsel presented no direct evidence to refute that Mr. Kliner made this purported statement. In his amended post-conviction petition Mr. Kliner provided evidence that he told his counsel that this testimony was false and that he asked his counsel to investigate the Ferris wheel, and that Mr. Kliner's post-conviction counsel was easily able to determine that Great America had not had a Ferris wheel since 1984.

At trial the state argued that Ms. Behenna's delay in telling anyone about the purported confessions Mr. Kliner made to her was based on Ms. Behenna's fear of Mr. Kliner. Mr. Kliner's trial counsel presented no direct evidence that Behenna was not afraid of Mr. Kliner. In his amended post-conviction petition Mr. Kliner presented evidence that he told his trial counsel that Andy Lago,

10

Revised: 7/20/05

Roy Lago and Richard Burke could present evidence that Ms. Behenna was not afraid of him. He also presented evidence that had these witnesses been called to testify, they would have testified that Ms. Behenna was not afraid of Mr. Kliner, but was very angry at him for ending their relationship.

Each of these failures to investigate or impeach state witnesses prejudiced Mr. Kliner, because had this impeachment evidence been presented it would have undercut the state's evidence that Mr. Kliner ever made incriminating statements to anyone about Dana Rinaldi's death. Particularly given the lack of physical evidence connecting Mr. Kliner to the crime, these purported incriminating statements were a major reason the jury convicted him. The court, in dismissing his amended post-conviction claims of ineffective assistance of counsel based on failure to impeach, made unreasonable findings of fact and unreasonably applied clearly established federal law in concluding that it was not ineffective to have failed to present this evidence. The Illinois Appellate Court and the Illinois Supreme Court likewise made unreasonable findings of fact and unreasonably applied clearly established federal law in affirming the dismissal of these claims.

**(C) Ground three:**   **Mr. Kliner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel where his attorney failed to investigate and present evidence that someone other than Mr. Kliner shot and killed Dana Rinaldi.**

Supporting Facts:

At trial, the defense did not present any evidence that someone other than Mr. Kliner had shot and killed Dana Rinaldi. However, in his amended post-conviction petition Mr. Kliner presented evidence that during pre-trial discovery his trial counsel received police reports and grand jury testimony from Charles Burnett. In these materials, there was evidence that Burnett knew Joseph Rinaldi and was his good friend, that Burnett went to the Safari Club in Schaumburg, Illinois with Rinaldi in 1988, and that while at the Safari Club Burnett met someone named "Psycho" and someone named "Mike" who he later identified as Michael Permanian (Burnett was not able to identify the person known as "Psycho," but Mr. Kliner informed his trial counsel that Permanian had a friend, James Ryan, whose nickname was "Psycho"). These materials also contained evidence that Joseph Rinaldi told Charles Burnett that he had hired these two men to kill his wife. Mr. Kliner presented evidence that he told his trial counsel that he had never been to the Safari Club and had never been known as "Psycho." Kliner also told his trial counsel that his friend Karen Glenn had more information about Michael Permanian and James Ryan. George Lynch did not interview Karen Glenn or Charles Burnett or present any evidence at trial about "Psycho" or about Charles Burnett's statements. Mr. Kliner argued that although Charles Burnett had refused to speak to his amended post-conviction investigator, had his trial counsel called Mr. Burnett he would have testified in keeping with the police reports and grand jury testimony. Mr. Kliner further presented evidence that had his counsel called Karen Glenn to testify she would have testified that she had known James Ryan since 1979, that Ryan had lived with her for approximately six months, that Ryan and Permanian were good friends, and that Ryan was known as "Psycho." In addition, had Mr. Kliner's trial counsel talked to Cynthia Hani about James Ryan she would have testified that she came from the same neighborhood as James Ryan and that people called James Ryan "Psycho." She also would have testified that her cousin had a child with Ryan and that in 1989 Ryan telephoned Hani and asked her to tell her cousin that he had inherited a large sum of money and wanted to pay the cousin child support.

Mr. Kliner's trial counsel's failure to investigate or present evidence of James Ryan's involvement prejudiced Mr. Kliner, because had this evidence been presented it would have undercut the state's evidence that Mr. Kliner killed Dana Rinaldi, and would have explained why there was evidence that Michael Permanian was involved in the crime. Particularly given the lack of physical

Revised: 7/20/05

evidence connecting Mr. Kliner to the crime, evidence of another individual's involvement would have carried significant weight with the jury. The court, in dismissing his amended post-conviction claims of ineffective assistance of counsel based on failure to investigate or present evidence of an alternative theory of the crime, made unreasonable findings of fact and unreasonably applied clearly established federal law in concluding that it was not ineffective to have failed to present this evidence. The Illinois Appellate Court and the Illinois Supreme Court likewise made unreasonable findings of fact and unreasonably applied clearly established federal law in affirming the dismissal of these claims.

**(D) Ground four:**      **Mr. Kliner was denied his Sixth and Fourteenth Amendment rights to testify and to the effective assistance of counsel where his attorney prevented him from testifying by telling him that he would have to find another lawyer if he wanted to testify.**

Supporting Facts:

In his amended post-conviction petition Mr. Kliner presented evidence that he told his trial counsel that he wanted to testify on his own behalf, and that although his trial counsel initially told him that there was no reason he should not testify, during trial his trial counsel insisted he not testify and told Mr. Kliner that if he wanted to testify his counsel would "walk" and he could find another attorney. Mr. Kliner presented evidence in the form of his own affidavit and testimony from his step-father. The court, in denying his post-conviction claim on this ground, made unreasonable findings of fact and unreasonably applied clearly established federal law in concluding that Mr. Kliner's Sixth and Fourteenth Amendment rights to testify and to the effective assistance of counsel were not violated.

**(E) Ground five:**      **Mr. Kliner was denied his Fifth, Sixth and Fourteenth Amendment rights to due process, to effective assistance of counsel, and to a fair and public trial by jury where the trial court failed to inform him of written notes sent by the jury to the judge, resulting in improper *ex parte* communications between the judge and the jury that prejudiced Mr. Kliner's rights.**

Supporting Facts:

It is undisputed that the trial judge received from the jury six separate written notes asking questions and requesting accommodations. The written notes asked:

- "We need transcript of trial. Opening statements, Ranialdi [*sic*] testimony." The court responded, "no."

- "When were these pictures taken. What were dates taken of People's exhibit 56, 57, 58, 60." The court responded, "Feb. 1988." Below that response was written "We disagree" with lines drawn through those words.

- "We are done for today! B-Team."

- Someone wishes to walk around block escorted is this okay? One person needs to get fresh air and clear their head. Thanks." The court responded, "no, sorry."

- "We are done for today." The court responded, "Transportation is coming at 6:00 pm continue to deliberate."

Revised: 7/20/05

- "Your Honor, We were very disappointed with the accommodations last night. The rooms and halls were filthy (popcorn on floor, cigar butts lying around, etc.) Water pressure was non-existent and the food was substandard. Can any of this be fixed should we need to stay longer? Thank you very much [followed by seven signatures]."

The record contains no evidence that the trial court ever informed defense counsel of any of the notes or of its responses (or lack of responses) to the notes. The Illinois Supreme Court unreasonably applied clearly established federal law and made an unreasonable determination of the facts in concluding that this *ex parte* communication did not prejudice Mr. Kliner.

**(F) Ground six:    Mr. Kliner was denied his Sixth and Fourteenth Amendment right to a speedy trial and Fourteenth Amendment right to equal protection where 531 days passed between his arrest and the commencement of his trial.**

Supporting Facts:

Five-hundred and thirty-one days passed between Mr. Kliner's arrest and the commencement of his trial. In its ruling, the Supreme Court of Illinois made unreasonable findings of fact in concluding that all but 12 of the 47 days in the delay from June 10, 1993 - July 27, 1993 were attributable to petitioner. The prosecutor conceded that the 34 days between June 10 and July 14, 1993, were not attributable to petitioner, and the record is silent on the reason for the delay from July 14, 1993 - July 27, 1993. The Supreme Court and the trial court made unreasonable findings of fact in attributing the 131 day-period from March 14, 1993 until July 22, 1994 to petitioner. Although Mr. Kliner had motions pending during that time, the motions were before judges who had no authority and indeed refused to take any action in regard to the case, and so this delay was not a result of Mr. Kliner's actions and cannot be attributed to him. The trial court and the Illinois Supreme Court made unreasonable findings of fact that the period of time from March 23, 1995 to June 5, 1995 was attributable to petitioner, because Mr. Kliner had made a speedy trial demand and had stated to the court on March 23 that he was ready to proceed to trial. Finally, the trial court and the Illinois Supreme Court made unreasonable findings of fact that the period of time from July 19, 1995 to January 25, 1996 was attributable to Mr. Kliner. The state continued the case multiple times and reversed its election to try Mr. Kliner's other case first. Here, the trial court and Illinois Supreme Court made an unreasonable finding of fact that the state's change in election was not done in bad faith and to further delay Mr. Kliner's trial and deprive him of his right to a speedy trial.

**(G)    Ground seven:    Mr. Kliner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel to the extent that his appellate counsel failed to argue on appeal that the 531 days that passed between his arrest and the commencement of his trial violated his Sixth and Fourteenth Amendment right to a speedy trial and Fourteenth Amendment right to equal protection.**

Supporting Facts:

On appeal, Mr. Kliner's appellate counsel raised the argument that the 531 days that passed between his arrest and the commencement of his trial violated the Illinois speedy trial statute. Mr. Mr. Kliner asserts that his appellate counsel's argument encompassed the argument that the delay also violated his Sixth and Fourteenth Amendment rights. However, to the extent that this Court concludes that Mr. Kliner's appellate counsel did not raise his Sixth and Fourteenth Amendment rights, any such failure by his counsel denied Mr. Kliner his Sixth and Fourteenth Amendment right to the effective assistance of counsel.

Revised: 7/20/05

**(H)    Ground eight:**    **Mr. Kliner was denied his Sixth and Fourteenth Amendment right to confront witnesses against him where the trial court did not allow him to cross-examine Joseph Rinaldi about his use of tranquilizers during trial, and did not allow him to cross-examine Tammy Behenna about her name, address, employment, and social security number and limited cross-examination of Ms. Behenna about custody issues relating to her child with Mr. Kliner.**

Supporting Facts:

The record clearly shows that the trial judge, when informed after Mr. Rinaldi's testimony that the defense had evidence that Joseph Rinaldi had taken tranquilizers prior to testifying against Mr. Kliner, held an evidentiary hearing and ultimately refused to allow the defense to inquire about the tranquilizers or to present evidence that would have supported that Joseph Rinaldi took tranquilizers prior to taking the stand. The Illinois Supreme Court unreasonably applied clearly established federal law and made a decision based on an unreasonable determination of the facts in finding that the trial court did not abuse its discretion in precluding cross-examination of Mr. Rinaldi about his use of tranquilizers.

The record also clearly shows that the trial court granted the prosecution's motion in limine to prevent the defense from cross-examining Tammy Behenna about her new name, home address, employer and social security number, since Ms. Behenna had relocated and changed her name with the assistance of the State's Attorney's Office. Defense counsel argued that this information was necessary to investigate Behenna and challenge her version of events, given that her testimony about Mr. Kliner's purported incriminating statements to her was crucial to the trial. Likewise, the trial court prevented the defense from questioning Ms. Behenna about issues concerning the custody of her and Mr. Kliner's child, and the terms of a visitation order concerning Mr. Kliner's mother's visitation of the child. Such questioning would have gone to whether Ms. Behenna's words and actions in response to that order revealed her bias against Mr. Kliner. Investigation and inquiry into these areas would have been key to Mr. Kliner's defense. The Illinois Supreme Court unreasonably applied clearly established federal law and made a decision based on an unreasonable determination of the facts in finding that the trial court did not abuse its discretion in precluding cross-examination and investigation about these issues.

**(I)    Ground nine:**    **Mr. Kliner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel to the extent that his appellate counsel failed to argue on appeal that the trial court's refusal to allow Mr. Kliner to cross-examine Joseph Rinaldi about his use of tranquilizers prior to taking the stand violated Mr. Kliner's Sixth and Fourteenth Amendment right to confront witnesses against him.**

Supporting Facts:

On appeal, Mr. Kliner's appellate counsel raised the argument that the trial court erred by refusing to allow Mr. Kliner to cross-examine Joseph Rinaldi about his use of tranquilizers prior to taking the stand. Mr. Kliner asserts that his appellate counsel's argument encompassed the argument that the court's refusal to allow Mr. Kliner to cross-examine witnesses violated Mr. Kliner's Sixth and Fourteenth Amendment right to confront witnesses. However, to the extent that this Court concludes that Mr. Kliner's appellate counsel did not raise his Sixth and Fourteenth Amendment right to confront witnesses, any such failure by his counsel denied Mr. Kliner his Sixth and Fourteenth Amendment right to the effective assistance of counsel.

Revised: 7/20/05

**(J) Ground ten:**      **Mr. Kliner was denied his Fifth and Fourteenth Amendment right to due process where, in closing arguments, the prosecutor referred to prejudicial testimony that had been admitted only before the jury of his co-defendant, Michael Permanian.**

Supporting Facts:

In closing arguments, the prosecutor referred to evidence that Tammy Behenna cooperated with the police and wore a wire when speaking to Michael Permanian in order to attempt to get information from him. The prosecutor also referenced testimony that Michael Permanian patted Tammy Behenna down looking for a wire. Testimony about Mr. Permanian patting down Ms. Behenna was admitted only for Mr. Permanian's jury and should never have been referenced at Mr. Kliner's trial. However, the Supreme Court of Illinois and the trial court made unreasonable findings of fact and unreasonably applied clearly established federal law that this error was harmless and could be corrected by trial court's instruction to the jury to disregard the comment; the Supreme Court of Illinois unreasonably concluded that this instruction sufficiently protected Mr. Kliner's right to due process.

**(K)    Ground eleven:**      **Mr. Kliner was denied his Fifth and Fourteenth Amendment right to due process where the court allowed improper hearsay testimony from John Apel that Joseph Sblendorio had purportedly told John Apel of a purported confession Mr. Kliner made to Mr. Sblendorio.**

Supporting Facts:

During Mr. Kliner's trial, John Apel testified on cross-examination that he told investigating officers that he had no first-hand knowledge of Dana Rinaldi's murder, and that he had received all of his information about the case from Joseph Sblendorio. Apel then testified that this statement to law enforcement was false, and that he was afraid of Mr. Kliner. On redirect, the prosecution elicited testimony that Apel discussed with Sblendorio the things that Apel testified about and relayed facts or knowledge from his conversation with Sblendorio to the police. The Illinois Supreme Court made unreasonable findings of fact in concluding that there was a valid non-hearsay reason for admitting this testimony.

**(L) Ground twelve:**      **Mr. Kliner was denied his Fifth and Fourteenth Amendment right to due process and Sixth and Fourteenth Amendment right to confront witnesses against him where the court, over defense objection, permitted the state to elicit impermissible evidence that Mr. Kliner had pistol-whipped Tammy Behenna, and also when, having made that ruling, the court refused to allow the jury to hear that Mr. Kliner was acquitted of armed violence stemming from those allegations.**

Supporting Facts:

At Mr. Kliner's trial, Tammy Behenna testified that there was an "occurrence" between her and Mr. Kliner which led to her arrest and led to her appearing in court to seek an order of protection against him. The defense introduced this information in order to demonstrate that although Ms. Behenna had numerous opportunities, in filing documents related to her order of protection and in speaking to the judge, to indicate that she believed Mr. Kliner had participated in Ms. Rinaldi's murder, she did not do so until later. On re-direct, the court allowed Ms. Behenna to testify that she sought an order of protection against Mr. Kliner because he had "pistol-whipped" her. The defense immediately objected and asked for a mistrial, but the court allowed the evidence to come in, stating

Revised: 7/20/05

that the defense had "opened the door" and that the jury "ha[d] a right to know what the allegations were with regard to the order of protection and not leaving them hanging as to what happened and how come there was no conclusion." Despite allowing that testimony, the judge did not allow evidence from the defense that Mr. Kliner was acquitted of armed violence stemming from those allegations. The Supreme Court of Illinois properly found that the trial court abused its discretion in admitting evidence that Mr. Kliner pistol-whipped Tammy Behenna. However, the Supreme Court unreasonably applied clearly-established federal law and made an unreasonable determination of the facts in concluding that this evidence was not so prejudicial as to deny Mr. Kliner a fair trial, and that the failure to allow Mr. Kliner to present evidence that he was acquitted of armed violence did not prejudice him.

**(M)    Ground thirteen: Mr. Kliner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel to the extent that his appellate counsel failed to argue on appeal that the trial court's ruling allowing the state to elicit evidence that Mr. Kliner had pistol-whipped Ms. Behenna but disallowing evidence that Mr. Kliner was acquitted of armed violence violated Mr. Kliner's Fifth and Fourteenth Amendment right to due process and Sixth and Fourteenth Amendment right to confront witnesses against him.**

Supporting Facts:

On appeal, Mr. Kliner's appellate counsel raised the argument that the trial court erred by allowing the state to elicit evidence that Mr. Kliner had pistol-whipped Ms. Behenna but disallowing evidence that Mr. Kliner was acquitted of armed violence. Mr. Kliner asserts that his appellate counsel's argument encompassed the argument that this error violated Mr. Kliner's Fifth and Fourteenth Amendment right to due process and Sixth and Fourteenth Amendment right to confront witnesses against him. However, to the extent that this Court concludes that Mr. Kliner's appellate counsel did not raise Mr. Kliner's Fifth and Fourteenth Amendment right to due process and Sixth and Fourteenth Amendment right to confront witnesses against him, any such failure by his counsel denied Mr. Kliner his Sixth and Fourteenth Amendment right to the effective assistance of counsel.

**(N) Ground fourteen:    Mr. Kliner was denied his Fourteenth Amendment right to due process where the prosecutor made prejudicial statements in his opening statement concerning Kliner's ownership of a .22 caliber handgun, but then failed to present any evidence of such ownership.**

Supporting Facts:

During opening statements in Mr. Kliner's trial the prosecutor stated that witnesses would testify that Mr. Kliner had possessed or purchased handguns. The prosecutor made this statement after the trial judge had already granted defendant's motion in limine to exclude any evidence about the alleged guns because there was no evidence connecting any weapon purportedly owned by the defendant to Ms. Rinaldi's murder. The Supreme Court of Illinois correctly ruled that the prosecutor's remarks concerning Mr. Kliner's prior purchase or possession of a .22 caliber handgun was improper, and specifically found that the prosecutor had no good-faith basis to believe that evidence concerning the guns would be admitted. However, the Supreme Court of Illinois made an unreasonable determination of the facts in finding that this statement did not deny Mr. Kliner a fair trial.

Revised: 7/20/05

**(O)    Ground fifteen:    Mr. Kliner was denied his Fifth Amendment privilege against self-incrimination where, in closing arguments, the prosecutor intentionally directed the jury's attention to Mr. Kliner's failure to testify and to his failure to present an affirmative defense.**

Supporting Facts:

In closing arguments, the prosecutor repeatedly emphasized to the jury that the "only witnesses" called by the defense rebutted certain witnesses, and emphasized that Joseph Rinaldi's testimony was unrebutted and that Mr. Kliner had subpoena power and could have called any witnesses he wanted to call and presented any evidence he wanted to present. The Supreme Court of Illinois made an unreasonable finding of fact that Mr. Kliner's defense invited these comments and that the prosecutor's comments were not intended to direct attention to Mr. Kliner's failure to testify.

**(P) Ground sixteen:    Mr. Kliner was denied his Fifth and Fourteenth Amendment right to due process where the court improperly denied Mr. Kliner's motion for a hearing concerning *ex parte* communications with the judge about security concerns, and when the court further failed to recuse herself from the sentencing hearing.**

Supporting Facts:

After Mr. Kliner's trial, Mr. Kliner moved for a hearing on whether the sheriff's department had communicated with the judge about threats to the judge and whether the judge had ordered additional security for herself. The trial judge denied that any *ex parte* contacts occurred and denied the motion for a hearing. The Illinois Supreme Court unreasonably applied clearly-established federal law and made unreasonable findings of fact in concluding that the trial judge did not abuse her discretion in not recusing herself.

**(Q)    Ground seventeen:    Mr. Kliner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel to the extent that his appellate counsel failed to argue on appeal that the trial court's denial of Mr. Kliner's motion for a hearing concerning *ex parte* communications about security concerns violated his Fifth and Fourteenth Amendment right to due process.**

Supporting Facts:

On appeal, Mr. Kliner's appellate counsel raised the argument that the trial court erred by denying Mr. Kliner's motion for a hearing concerning *ex parte* communications about security concerns. Mr. Kliner does not concede that his appellate counsel's arguments did not encompass the argument that this error violated Mr. Kliner's Fifth and Fourteenth Amendment right to due process. However, to the extent that this Court concludes that Mr. Kliner's appellate counsel did not raise Mr. Kliner's Fifth and Fourteenth Amendment right to due process, any such failure by his counsel denied Mr. Kliner his Sixth and Fourteenth Amendment right to the effective assistance of counsel.

Revised: 7/20/05

**(R) Ground eighteen:**  **Mr. Kliner was denied his Fifth and Fourteenth Amendment right to due process where all of the errors above cumulatively denied him the right to a fair trial.**

Supporting Facts:

All of the facts described to support grounds one through seventeen above, even if individually insufficient to support a finding of a violation of Mr. Kliner's constitutional rights, collectively demonstrate that Mr. Kliner's trial was fundamentally unfair.

**(S) Ground nineteen:**  **Mr. Kliner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel to the extent that his appellate counsel failed to argue on appeal that the trial court's numerous errors, described in grounds one through seventeen above, cumulatively denied Mr. Kliner his Fifth and Fourteenth Amendment right to a fair trial.**

Supporting Facts:

As described in grounds one through seventeen above, Mr. Kliner's counsel on appeal raised numerous errors by the trial court. However, Mr. Kliner's appellate counsel did not argue that these errors cumulatively denied Mr. Kliner's Fifth and Fourteenth Amendment right to a fair trial. This failure denied Mr. Kliner his Sixth and Fourteenth Amendment right to the effective assistance of counsel.

**(T) Ground twenty:**  **Mr. Kliner is actually innocent of the crime for which he was convicted such that failure of this Court to review his claims would result in a fundamental miscarriage of justice.**

Supporting Facts:

As is set forth above, Mr. Kliner is actually innocent of the murder for which he was convicted. Mr. Kliner has steadfastly maintained his innocence and as set forth in the grounds above, has asserted his innocence at every possible turn. As such, this Court's failure to review his claims would result in a fundamental miscarriage of justice.

2.  Have all grounds raised in this petition been presented to the highest court having jurisdiction?

YES ( )  NO ( X )

3.  If you answered **"NO"** to question (2), state briefly what grounds were not so presented and why not:

Mr. Kliner's post-conviction counsel, although it raised in his amended post-conviction petition the issue in ground one concerning the failure to present the laboratory reports about the hair evidence, did not raise specifically raise the issue concerning hair evidence on appeal to the Illinois Appellate Court or in the petition for leave to appeal to the Illinois Supreme Court (the remaining issues in ground one were raised to the Illinois Supreme Court). This was due to post-conviction counsel's error.

Mr. Kliner's post-conviction counsel did not specifically raise the issues in ground two

Revised: 7/20/05

concerning impeachment of Ms. Behenna's testimony that she was afraid of Mr. Kliner, and of her testimony that Mr. Kliner had made an incriminating statement to her at Great America Amusement Park, on appeal to the Illinois Appellate Court or in the petition for leave to appeal to the Illinois Supreme Court, although it did raise these issues in the amended post-conviction petition (and did raise the remaining issues in ground two to the Illinois Supreme Court). This was due to post-conviction counsel's error.

Mr. Kliner's post-conviction counsel, although it raised ground four in the amended post-conviction petition, did not raise specifically raise this ground on appeal to the Illinois Appellate Court or in the petition for leave to appeal to the Illinois Supreme Court. This was due to post-conviction counsel's error.

Grounds six, eight, twelve, and sixteen were raised as state statutory issues on direct appeal. To the extent this Court concludes that these grounds were not clearly presented as federal constitutional issues to the Illinois Supreme Court, this is due to the ineffective assistance of appellate counsel.

Grounds seven, nine, thirteen, seventeen and nineteen were not raised to the highest court having jurisdiction. This was due to the error of post-conviction counsel.

Although the separate issues comprising the general claim in ground eighteen were primarily raised before the highest court having jurisdiction, this ground was not raised as a cumulative due process claim. This was due to ineffective assistance of appellate counsel and post-conviction counsel's error.

Ground twenty was not raised to the highest court having jurisdiction as a separate ground for relief, but Mr. Kliner has continuously asserted his innocence before every possible court having jurisdiction.

The failure to raise any other ground before the highest court having jurisdiction is due to the ineffective assistance of appellate counsel and/or the error of post-conviction counsel.

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing:

> George Patrick Lynch
> 3030 Warrenville Road
> Suite 215
> Lisle, Illinois  60532-3646

(B) At arraignment and plea:

> George Patrick Lynch
> 3030 Warrenville Road
> Suite 215
> Lisle, Illinois  60532-3646

Revised: 7/20/05

(C) At trial:

> George Patrick Lynch
> 3030 Warrenville Road
> Suite 215
> Lisle, Illinois 60532-3646

(D) At sentencing:

> George Patrick Lynch
> 3030 Warrenville Road
> Suite 215
> Lisle, Illinois 60532-3646

(E) On appeal:

> Charles M. Schiedel (then Deputy Defender)
> John J. Hanlon (then Assistant Defender)
> Office of the State Appellate Defender
> Supreme Court Unit
> P.O. Box 5720
> 400 South Ninth Street, Suite 101
> Springfield, Illinois 62705-5720

(F) In any post-conviction proceeding:

> Anna Ahronheim (then Deputy Defender)
> Office of the State Appellate Defender
> Capital Litigation Division
> 600 W. Jackson Boulevard
> Suite 600
> Chicago, Illinois 60661

> Martin Carlson
> (Now retired, previously Staff Attorney
> with the Office of the State Appellate Defender)

(G) Other (state):

> **Motion for DNA Testing:**
> Anna Ahronheim, Deputy Defender
> Marshall Hartman (formerly with the Office of the State Appellate Defender)
> Jon Stromsta (former Staff Attorney with the Office of the State Appellate Defender)
> Office of the State Appellate Defender
> Post Conviction Unit
> 600 W. Jackson Boulevard
> Suite 600
> Chicago, Illinois 60661

> Allan Sincox
> Office of the State Appellate Defender

Revised: 7/20/05

Death Penalty Trial Division
20 North Clark
Suite 2800
Chicago, Illinois 60602-4109

Steve Richards
(previously with the Office of the State Appellate Defender)

Jed Stone
Stone & Associates LLC
415 West Washington Street
Suite 107
Waukegan, Illinois 60085-5564

**Motion for Additional DNA Testing:**
Anna Ahronheim, Deputy Defender
Jon K. Stromsta (former Staff Attorney with
the Office of the State Appellate Defender)
Justyna M. Garbaczewska, Staff Attorney
Post Conviction Unit
20 N. Clark Street, Suite 2800
Suite 600
Chicago, Illinois 60602

Allan Sincox
Office of the State Appellate Defender
Death Penalty Trial Division
20 North Clark
Suite 2800
Chicago, Illinois 60602-4109

Steve Richards
(previously with the Office of the State Appellate Defender)

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO ( X )

Name and location of the court which imposed the sentence: N/A

Date and length of sentence to be served in the future: N/A

Revised: 7/20/05

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: May 30, 2006
(Date)

_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

_____
(Signature of petitioner)                    Ronald S. Kliner

_____            # B77152
(I.D. Number)

_____            P.O. Bx 112
(Address)

                                            Joliet, IL
                                                60434

Revised: 7/20/05